Thank you, Judge. By way of point, I'd just like to reserve three minutes for rebuttal if the clerk can see to that. I'd appreciate it. Good morning, Your Honour. It's Matthew Friedman of Council for Appellant in this matter. That's Brittney Gardineer. May it please the Court. In our view, this case concerned a dispute over two competing interpretations over a set, and we believe it to be a set, of contracts concerning the extension of coverage in the similar interpretations. On the one hand, we have our interpretation, Ms. Gardineer's interpretation. We believe that that interpretation offers, in the words of Century Surety Company, the most reasonable and harmonious meaning to the entire policy. We ask this Court to add nothing. We ask this Court to delete nothing. We ask this Court to modify nothing. But the problem is that in the umbrella policy, she's not an insured by any stretch of the definition of the word insured because she doesn't live with the primary insured. To be sure, Judge, and I would argue, we would concede this case is not about her being defined as a named insured or about her being defined as a relative. We would concede she's not the named insured. That was Dennis Hill. Moreover, she does not live with Dennis Hill, despite being a relative, right? She's not within those confines. Do you agree she's not within the definition of insured? Within the definition of insured under the scope of coverage. But where we take issue with that holding, where we take issue with that conclusion, is you have to give harmony and reasonable interpretation to the entire policy. And when we look at Exclusion 29, we end up with a reference to entrustment by an insured, which clearly Dennis Hill wasn't insured, and clearly the entrustment did occur, to any person, Judge. But that's talking about Dennis's liability on a negligence claim that he negligently allowed his card to be used by someone else who had an accident, and so then he would be liable. So it's talking about that category of damages for him as an insured. That's not what's at issue here. Respectfully, Your Honor, I would disagree with the characterization. I think that that's referring to where MPAC would extend coverage. And I think it's specifically, when you use the word negligent, I don't believe that the exclusion itself talks about it. It's simply entrustment of any kind, entrustment without any modifier, to buy an insured to any person. So we interpret it differently. And I think maybe perhaps what Your Honor has pointed out is it best that that may be an instance of ambiguity. And I think then Your Honor could certainly look to Nevada case law and this circuits case law that talk about, in the face of ambiguity, we resolve them against the insurance company, against the drafter, and in favor of coverage. We don't believe it to be ambiguous when read in totality. And I would argue more to the point, when we read the entire contract and we get to exclusion 29, exclusion 29 specifically refers the court to the underlying auto policy. And it says this exclusion does not apply where, excuse me, if coverage is provided by primary insurance. Now clearly it is undisputed that coverage was provided by the primary insurance here, because Nevada revised statute requires it, first and foremost. This court has adopted that in the Johnson case and recognizes that. And in point of fact, they tendered policy limits. So I don't think there can be any question of whether coverage existed under the primary policy. And so I would argue, Your Honor, respect to your question, that that's what that takes us to is a situation of internal ambiguity, which is resolved via the clear nexus, unbreakable nexus between this umbrella policy and the automobile policy, which clearly provides coverage. And I think if NPAC had desired to exclude it, clearly exclusions are an essential part of a contract and need to be there. And they provide the most specific instances and nuances of what is not I would argue the exclusion 29 when read is not ambiguous. It directs the court to the underlying automobile policy, which clearly provides coverage as under permissive use. But even if you're correct on that, on the reading of the loss arising out of, all that the final sentence says, or the further sentence says, this exclusion does not apply if the exclusion doesn't exist. This exclusion does not apply if coverage is provided. So therefore, the exclusion sort of drops out of the picture. And then the question is, what's the coverage under the other terms of the umbrella policy? I would suppose there that Your Honor would be forced to get out your blue pen and negate those two sentences. I don't read that clause respectfully to say that. I would argue the next sentence further dots our I or crosses our T by saying our coverage is no broader than the primary insurance except for our limit of liability. That to me is clearly should be read and would be read by any lay person, reasonable lay person negotiating for this policy to mean that our coverage is no broader than the so we told you look to the primary insurance policy and we're not issuing any greater coverage than the primary insurance policy, save and except for the extension of the liability limit up to a million dollars in this instance. And again, they're refining that and again, articulating that. So while I believe the flow chart clearly reads without ambiguity that coverage exists, I think what we're discussing at this point really highlights that at worst it's ambiguous. I don't know how we could conclude from those differing perspectives that it's clearly not covered. And again, I think the breath and body case law stands for the proposition that if it's clearly not, if it's not clearly excluded, you resolve that ambiguity in favor of coverage. What's your best case? I didn't find a case that really told me everything that you've told me. What's your best case to substantiate the proposition that you've given to us today? I would rely on century surety and I would combine it with Salterelli and I would say in century, the court is instructed to give reasonable and harmonious meaning. And I think in order to get to the conclusion, that's a generalization. I wondered whether there was some case somewhere where they had specifically held what you said. I take it your answer is I think it's a case of first impression within this circuit. I think under Nevada law, Nevada Supreme Court law, it's very clear how to resolve ambiguity. I think as to the issue of the primacy, so to speak, of scope of coverage versus what we're considering sort of this latency or secondary nature of an exclusion is a case of first impression within this court. It does not exist in the Ninth Circuit and certainly in under Nevada law. Then go outside our circuit. What's your best case? I would distinguish. So I would look at the line of cases cited to you by the respondent, wherein certainly there are some jurisdictions and in the Eighth Circuit endpoint where they do discuss it and they do discuss the notion that we wouldn't create coverage. Give me one case. You're just sending me to reread what I've already read. Okay. All right. I don't have a case on point that stands for that exact proposition. Okay. Thank you. But I do think that the point is worth noting. I think, again, we're talking about fundamentally a contract and the benefit of the bargain of two parties. And I think before this court decides to take out a pen and negate two sentences that I think if read in conjunction with Exclusion 29, provide a clear roadmap of what coverage should issue, then in order to get around it, this court has to render it surplus. It has to negate those clauses and say, well, if we take those out, then it's a consistent reading and we don't have coverage. And I would also point the court to the fact that this exclusion is really the most on point to this fact pattern. When we look at the scope of coverage or the definition scope of coverage, it's not talking about the notion of entrustment. The exclusion is actually the only place you're saying entrustment by an insured to any person is not covered. And if they had stopped at that where it says any vehicle or aircraft period, I think Mr. Patton's case is done. I think certainly I'm not here right now, and it's clearly not covered. But the next two sentences, this exclusion does not apply if coverage is provided by primary insurance. I don't know how you ignore that when clearly coverage existed under the primary policy. Have the Nevada courts ever addressed the from an exclusion can expand coverage beyond the affirmative coverage terms of the policy? I do not believe so. No, Your Honor, I would simply revert to the Supreme Court of Nevada's holding in Powell, which talks about construction against the drafter in favor of coverage in the face of ambiguity. But I don't believe they've taken up that specific. So so this court has said that when Nevada law is lacking, its courts have looked to the law of other jurisdictions, particularly California, for guidance. And the California Court of Appeals in Harley Construction Company versus State Farm Firing Casualty says, quote, an exception to a policy exclusion does not create coverage, not otherwise available under the coverage clause. So if we follow that California case, your argument would not be persuasive, right? I understand the court's perspective. Certainly, I think under that scenario, you have a point. But I think I can distinguish the body of case laws in respondents brief site, including that California case, where there you're talking about internal ambiguity. Let's say a scope of coverage says one thing and an exclusion says another. And you have internal inconsistency where nowhere else to look. And I would, let's say, in that case, be asking the court to substitute its judgment in the face of ambiguity. Here, I think because of this unbreakable nexus, the reference specifically to look at a clear and unambiguous auto policy that provides coverage, I can distinguish. I'm not asking the court to gap fill for me. I'm telling you, do what ANPAC told you to do. Read the policy, go through the exclusion, the exclusion directs you to the auto policy, and you find the auto policy have coverage. So I would argue that I could distinguish that body of case law, Your Honor. I know I reserve, I have about 53 minutes. So I think I would leave the court with this before rebuttal. ANPAC, in my opinion here, they exclude coverage clearly for entrustment to any person. But then they say that entrustment exclusion does not apply if coverage is allowed under the auto policy. And then they tender policy limits under the auto policy resulting from said entrustment. And they had to, under NRS 485, 3091, and Johnson v. American. And now they're denying, even though the primary auto policy paid. To me, what we have at best there, Your Honors, is an ambiguous set of documents. I would argue when read together, it's not ambiguous. But certainly the document on its face, I guess I'm advancing an eight-corner theory rather than four. But I think the proposition is still the same. I think in my worst case, it's ambiguous and you should resolve in favor of coverage. And in best, when following ANPAC's own words, the result is coverage should be extended here. All right. Thank you, counsel. We'll hear next from Mr. Patton. Thank you, Your Honor. Thank you, judges. I represent American National Property and Casualty Company in this case. And I think you've fairly identified the key issues in it. I will tell you that I have prepared some remarks and I will take my time to offer those to you. And I'm certainly to answer any questions that you may have. Well, I mean, he certainly has a point when he says that the phrase, any loss arising out of the entrustment by any insured to any person with regard to the ownership, maintenance, use, loading, or unloading of any vehicle does apply to these circumstances. It is a loss. It arose out of the entrustment by the insured to a person of a vehicle. So that phrase, by its literal terms, covers this case. Is he wrong on that? I agree that that is in the policy. I don't believe it governs this case because there is no insured to which it applies. It describes any loss arising from the entrustment. It applies to Dennis who was the one who loaned the car. So it's a loss arising out of the insured's entrustment. If the loss was arising out of the insured's entrustment. However, in this case, we have agreed by the Global Settlement Agreement that the only way they can proceed is by a loss arising out of Lynette Hill's use of the vehicle. The negligent entrustment was not proved at trial in the state court and was in fact dismissed. But it doesn't say a negligent entrustment. It says any loss arising out of the entrustment. So he entrusted the car to her even if it was totally non-negligent and the loss arose from that. What they are referring to though there is that somehow there's this nexus because there's coverage provided by the primary insurance. What we know with regard to umbrella policies is there is almost exclusively always an umbrella relating to an underlying policy. What they're trying to get to here and what they would broadly read this to include is that somehow this umbrella policy, this personal umbrella policy should apply to every permissive user. And that's what they're doing with this exclusion and that is what the cases that I have cited, particularly the Eighth Circuit case, Rice and also Hendricks and Allen say you cannot do. This does not expand and I think your honor identified earlier when you looked at the exclusion and there is no case law that I'm aware of in Nevada regarding what the effect of an exception and an exclusion may be on coverage. But there are a number of cases standing for the proposition that an exception to an exclusion does not create coverage. Those are contained in pages 22 and 23 of my brief and in particular we relied on the PMB nutritionals case and it clearly says an exception to an exclusion only has bearing on that exclusions applicability. It is without force and with respect to other provisions of the policy. In other words, you cannot create coverage under an exception to an exclusion. What the exception does is it either negates the exclusion or it doesn't. But it doesn't create coverage. So in this case we have it clearly defined that Mr. Hill and his relatives living with him are excluded from coverage. Yes, he can under 29 if there is a negligent entrustment by him except in the circumstance where it's a negligent entrustment arising out of the primary policy identified on the umbrella contract and that is the case here. Now where would this be applicable otherwise? Let's consider maybe Mr. Hill loans a car from his neighbor. The neighbor gives him use in Nevada and Mr. Hill can loan that car to anyone else and give permission. Let's say he gives permission to Lynette to use the car of his neighbor and he negligently entrusts it to Lynette. Now we have a liability for negligent entrustment that is under exclusion 29 and it's not added back because in fact he does not have a connection with the primary coverage. His own car is still in his garage. It does not create a general expansion of this personal umbrella policy to all permissive users. I think we need to remember that the personal umbrella policy that is at issue here and on all of those and probably each one of us has one is sold at a comparatively moderate cost when compared to primary coverages and that's in order to extend protection and give financial security in cases where there may be a catastrophic loss that was identified by Appleman. In this case, I pointed out to the court in my footnote one that the cost of the umbrella policy at a million dollars in coverage was $365 a year. The cost for a liability policy, the liability policy underlying that Mr. Hill had was $2,072 for six months. So you can see that the premium that's calculated for an umbrella policy is based on the limited exposure and not that every permissive user of a named insured is going to be extended coverage. If it's personal, it has to have a particular relationship to a person. It doesn't connote public, general, common, universal or clearly in the policy and they are the insured Mr. Hill and his resident relatives and that's contained at ER 71 and ER 73 in this case. This is not an ambiguous the insuring agreement. Lynette does not meet the definition of insured. There is no double meaning or dual coverage here and Gardner herself concedes more than once in her brief, in the responding brief, quote, if the umbrella policy was the only policy at issue, then American National's argument and the district court's decision might be correct and then it says again, when the umbrella policy is viewed as standing alone, it might appear that the umbrella policy's coverage is limited to circumstances wherein an insured person, Dennis Hill, was liable for bodily injury or property damage in excess of the auto policy limits. If that is all the umbrella policy said regarding the umbrella scope of coverage, the parties would likely not be having this dispute. Well, when you look at the exclusion, it doesn't apply. So, all the policy says is what is reported here and agreed to and conceded by Gardner, namely that the policy is limited to the named insured and his resident relatives. The competing ambiguous language that they claim in this exclusion, 29, they say links the umbrella policy and the auto policy creating an ambiguity and I believe it was Judge Wallace who pointed out there are no cases that have ever been cited that I'm aware of in this jurisdiction or any other where the mere linking of an umbrella policy with an underlying policy creates permissive coverage for anybody operating that auto policy. It is just not the case. The Nevada law is pretty clear. It was identified by both of us in the 4th Street Place case and it's probably the same as it is in many other jurisdictions. So, do you agree that there's no controlling authority from the Nevada appellate courts that addresses the question specifically of whether an exception to an exclusion does or does not create coverage? I could not find a case in Nevada on that point. However, as the court is aware, there are cases from many other jurisdictions and I've cited to numbers of them that do claim exactly that. Is this a question we should certify to the Nevada Supreme Court? I think it's so simple that I would hate to, frankly, involve the Nevada Supreme Court because all of the jurisdictions that I am aware of state that you cannot create coverage with an exception to an exclusion. The exclusion either applies or it doesn't apply based on the exception, but if it doesn't apply, it's as if it's not even in the policy. And certainly we're not relying on that exclusion here. I think the district court was correct. The policy is unambiguous. If you read the policy as a whole, and this is what the Nevada law clearly is, that when you read a policy as a whole and its language is analyzed from the perspective of one untrained in the law or insurance, you give all of it its plain, ordinary, and popular connotation. You have to have at least two reasonable competing understandings of the policy language. If you look at the coverage agreement, there is no misunderstanding and Gardner concedes that. It is only when they look to the exception, which I believe you can't look to because the exception to the exclusion does not add back coverage, but it's only there that they find this, quote, coverage for permissive users. And I would point out to the court the three key cases that I cited and that have not been discussed at all by the Gardner council, and that is the Rice case, the Allen case, and the Hendricks case, which appear to be on all fours with our circumstance. They have permissive use by a relative, albeit not a resident relative. They have a party injured making an agreement that they will try to claim back against the insurance. They have the umbrella policies, which do not extend to the permissive use, and they're all very clear about it. There is no permissive use addition in an umbrella policy. Now, regrettably, we don't have the entire policies to look at and say, oh, well, they had exclusion 29 too, but I'm guessing that they probably had something very akin to that. But the point is, you cannot look at just this exclusion 29 to the exclusion of the insuring agreement itself, which very clearly and admittedly sets out who is an insurer and say that that creates an ambiguity. You cannot read that provision as a whole and conclude that Gardner, excuse me, that Lynette Hill was intended to be insured under this umbrella policy. Let me just quote briefly the Allen court. Even if Brubacher, who was the man operating the suburban with the express permission of the Chessons, even if he was operating with the express permission of the Chessons, coverage does not inert to his benefit as an omnibus insured or a permissive user. To conclude, that would be to subvert the express policy definition of insured under the umbrella policy, which is not statutorily mandated to extend coverage to an omnibus insured under the terms of an insurance contract. That's exactly what we were talking about here. I would point out that at one point in my brief, I mistakenly confused the name of Allen with Rice, but the site is correct and the reference should have been to the Rice case, but I was citing the court to the Allen case in this case. The same thing is true in Hendricks. Permissive users, Cummings is not covered by the definition of the insured, so there is no coverage. Then the Rice case, of course, the Eighth Circuit, I think you'll find that is very instructive and also refuses to extend permissive coverage under a personal umbrella policy such as we have here. Thank you, your honors. Thank you, counsel. We'll hear rebuttal from Mr. Friedman. Thank you, your honors. I would begin with the notion of negligent entrustment and distinguish and say I would agree with your honors question. I don't believe there's anything in the plain language here that requires negligent entrustment. I do believe that to a degree, the argument of ANPAC here is give us relief from the language we drafted and put into a contract and negotiated for. If they wanted to include language concerning negligent entrustment and requirement of such a standard, they had every ability to negotiate for it and put it in the contract. They simply didn't. I would also argue... Are you aware of any authority from other jurisdictions that goes the other way on this exception to exclusion point from the various cases that your opposing counsel cites? I am not aware of any authority that goes the other way from the cases that counsel cites to answer your question. No, I am not. What I do believe here, though, is that counsel is arguing by analogy to issues that are not in the record. He's presuming that those cases were not looking to resolve an internal ambiguity where the, let's say, litigants were asking this court to resolve ambiguity. I think in this case, you don't need to substitute your judgment. So again, I would argue it is distinguishable from those cases. This is not a situation where it's a question of whether we have ambiguity or whether we don't. This is the question of within what I consider to be the eight corners of these documents, meaning the four corners of the umbrella and the umbrellas express continual reference to look at what was covered in the automobile policy. You can resolve this and you resolve it on the plain language that ANPAC drafted in its agreement. In effect, in a very simple fashion, what ANPAC is giving us the result we'd like. But in order to do that, you must ignore two sentences in a contract we drafted that points you to an instance where coverage should be extended. And they're saying we shouldn't do that as a matter of policy. Well, that's certainly not an articulated policy in the court of the state of Nevada, and it's not an articulated policy in the Ninth Circuit. So he's arguing by inference to things that he believes to be the case in these other cases, but it's not clear from the record that they were. It's not clear that exclusion 29 was as clear and ambiguous in referring you to the auto policy. And we don't know that that existed in Hendricks. He's presuming it does, but there's nothing in the record to reflect that. But now your case ultimately comes down to exclusion 29. If we were to disagree with your argument on exclusion 29, is that the end of the case? I think my argument, I would take issue with the way you characterize it in this sense. I'm arguing, Your Honor, that when read in the most fair and reasonable way, you must read these as eight corners. You must read this as a coextensive document. And I think when you do that, exclusion 29 as part of that requires you to look at the auto policy. I understand your point, though, and yes, I am hinging the case on the fact that exclusion 29 references the existence of coverage in the auto policy, which clearly there was. All right. Thank you, counsel. The case just
judges: Wallace, Rakoff, Collins